and others. For the appellants, we have some law students arguing today. I've given permission for that. Let's hear from someone for the appellant. Yes, Your Honor, we'll be splitting our time about four minutes and four minutes. Okay, you may proceed. Thank you, Judge Pooler, and your Honors, and may it please the Court. My name is Jordan Alston, and along with and Mr. Tarantula will focus on the other two issues raised in our brief. As your Honors know, this is the third time this case has come up on appeal. Twice before, this Court has vacated the judgments of the Northern District in their entirety, most recently remanding with instructions that Mr. Kotler be given, quote, a chance now to present all of the evidence to a jury. But the District Court did not follow these instructions. Instead, before trial, the District Court improperly dismissed Mr. Kotler's due process claim in its entirety and dismissed the deceased lead defendant, Superintendent Dinelli, without giving Mr. Kotler time to substitute his estate. Counsel, what would the due process claim add to his retaliation claim? Your Honor, we believe that the due process claim could have affected the jury's analysis on the retaliation claim. Was there any evidence that you would have put in on a due process claim that you couldn't put in on the retaliation claim? Yes, Your Honor. One piece of evidence would have been the transcript of the disciplinary hearing. The judge did not allow the entirety of that transcript to come in, and that would have been the linchpin of the due process claim. Contained within that hearing, Your Honor, were multiple inconsistencies by officers about how this search was conducted. And we think those inconsistencies would have increased the likelihood that the jury would have found that there was a conspiracy to place the weapon. What was the judge's rationale for excluding parts of that transcript? Your Honor, frankly, we think it was just a manifest impatience on the part of the District Court. The court repeatedly interrupted Mr. Kotler's... So it wasn't based on a difference between the due process claim and the retaliation claim. It was just impatience. Yes, Your Honor. It's the same impatience that led the court to repeatedly interrupt Mr. Kotler throughout trial. The same impatience that led the judge to hold a one-minute pseudo-conference before introducing new evidence into the factual deliberations of the jury, Your Honor. Separately, due process on its own was worthy of its own trial. And because it was its own distinct claim that was erroneously dismissed, we believe that the jury should have held a trial on that and could have found for Mr. Kotler independently of the judgment the jury found on the grounds of retaliation. Can I ask you one question about... Let me just step... Stepping you back to the argument you were just making, which is that if the due process claim had been in the trial, you could have gotten more evidence in. And that could have helped you in the retaliation claim, right? If you assume what I think to be the premise of the argument is that with an extra claim, you could have admitted additional evidence that otherwise would not have been admissible, aren't you effectively advocating for what in other contexts is called spillover prejudice? Evidence that would not have been admissible to support the retaliation claim would have come in for another purpose. And you could have leveraged it to be admissible for the retaliation claim. And I asked that really basically to say, that seems to be a problematic argument to make. Whereas I would understand a stronger argument, I think, is simply that all of that should have come in on the retaliation claim as admissible evidence, and that the district court abused its discretion in keeping it out. But could you tell me why that first argument helps you? So two points, Your Honor. We would agree with you that the transcript of the hearing should have come in. Second, Your Honor, there are other issues in this case, like the erroneous dismissal of Mr. Dinelli, that we defended in the case, that could have affected the jury's analysis on the retaliation claim, as well as other issues that Mr. Taranto will discuss in just a few moments that would have affected the jury's analysis on the retaliation claim. And you tell me how you have allocated your argument. Which of you is planning to address the Rule 25 issue? That would be me, Your Honor. Then could I ask you, and I know you're over time, but I'd like to ask you this question. Could you explain to us how we could rule in your favor on the Rule 25 issue in light of our previous decision in Unicorn? Basically, you'd be a lot better off if you were in the Ninth Circuit right now. But you're not, and you have Unicorn. So could you explain how that affects your argument? Certainly, Your Honor. So I would start with the Rule 25a.3 that says that the suggestion of death must be served in the same manner as the actual motion to substitute a successor or estate. In 25a.3, it says that it must be served in the same manner. Our understanding of Unicorn Tales is that the suggestion of death does not have to identify the successor on it, but that is a separate holding than the statutory requirement captured in 25a.3 that a suggestion of death must be served in the same manner. Separately within Rule 25, besides the reference to parties, the only non-parties referenced in the rule are a decedent, estate, or successor. Here, we believe that requirement was not met because while appellees and defendants did serve a statement of death to Mr. or suggestion of death to Mr. Coppler, that was never served to the estate, so it did not follow the same manner that the actual motion for substitution asked to meet to be valid. Again, I am conscious of time constraints, so happy to answer any more questions. And let me follow up on that. And I think it's a very interesting textual argument you're making. And again, one of my questions is whether it's not effectively foreclosed by Unicorn. In Unicorn, we said that you need not identify the successor, whether the estate or the administrator or the executor, whoever. Well, doesn't that mean that by definition in Unicorn, because they had not identified who that successor would be, they didn't serve that party? And therefore, wasn't the court in Unicorn really effectively facing the same situation you are here? If they need not identify them at all, then how can they be bound or required to serve them? So, Your Honor, we believe part of the purpose behind 25A3 is essentially giving notice to an estate or a successor of the possibility of a motion for substitution. That's important because that would bring them into potential litigation. And oftentimes, the estate or successor to a party may have different legal interests than the related decedent or the other parties in the case. So while Unicorn Tales did hold that the face of the suggestion of death does not have to put the name of the successor of the estate, we still believe that there was a purpose to be served in still requiring the police here to serve that statement of death as required by 25A3 to Mr. Dinelli's estate or successor. What evidence was excluded as a result of this? Your Honor, so we believe the exclusion of Mr. Dinelli meant that the jury, while it did get to hear evidence of Mr. Dinelli's retaliatory motive, it did not get to consider that evidence as a legal matter as it related to the retaliation, the retaliatory motive of Mr. Dinelli, but also of the other officials in this case. Throughout the defense's case in chief at trial, they argued that the officials present were not aware of Mr. Kotler's grievance activity and had no retaliatory motive as it related to that. But there was ample evidence on the record of Mr. Dinelli's retaliatory motive, evidence that the jury did get to hear, but did not get to consider in the context of its eventual verdict. Thank you, counsel. We'll now hear from Mr. Tarantola, who also has four minutes to argue trial issues. Thank you, Your Honor, and may it please the court. In addition to the pretrial errors that Mr. Alston described, the district court erred in the manner in which it conducted the trial. Our brief lays out some of the troubling evidentiary rulings that the trial judge made, which we think collectively warrant a new trial. But I'd like to focus particular attention in my limited time to the error that occurred after the close of evidence from the trial judge and properly introduce new evidence into the case. As you know, the district court received two factual questions from the jury that went directly to Mr. Kotler's credibility. And the court erred by giving factual answers, at least one of which was inaccurate, and which led to the jury's verdict less than 20 minutes later. Are you talking about whether he could have objected and the answer was inaccurate to that? Well, even aside from whether he was given a reasonable opportunity to object, the provision of extra record information to the jury is itself an error. It's a fundamental error. Our case law says it's a fundamental error that requires a new trial, if you're correct. Is that right? That's right. But, I mean, it would have been fundamental. The district judge knew that the jury was interested in whether Mr. Kotler could complain, because the prosecution stressed that in their closing statement quite a bit, didn't they? They said, here, you saw him. He didn't say a word.  And so it was on the juror's mind. Now, at that point, I assume the prosecution could have introduced the DOCS rules that they allude to now in their brief. Isn't that correct? They could have reopened the trial and introduced it. But they didn't do that, counsel, did they? That's right. Well, the court assumed, just based on an answer from defense counsel, that a prisoner could ask why they're being detained without any reference to the DOCS rules, which are important context. And the DOCS rules, which we cite in our brief, say that prisoners are not to verbally interfere with prison staff and that they're supposed to obey orders without argument. That was important context, because, as you said, the trial came down essentially to the relative credibility of the parties. Were they going to believe Mr. Kotler? Were they going to believe the defendant? Mr. Kotler was in the room, but his standby counsel was not when the jury question was read. Isn't that correct? That's right. If you look at the trial minutes, the amount of time that passed between getting the note, the court's getting the note, and answering the note was five minutes. So the court got it at 240, went out and talked to the parties briefly at 242, concluded that discussion at 243, sent the answer by 245. This was not the kind of careful, considered process that this court said is required under Collins. Mr. Kotler said he objected to the deputy clerk, but that's not apparent in the transcript. Isn't that correct? He did swear to that in his post-trial motion, but it does not appear in the trial transcript. So this is, according to case law from our circuit and other circuits, a fundamental error that relates to the legitimacy of the entire trial. Is that your argument? It is, and for both reasons. First, that the court introduced evidence from outside of the record, and even if it were a legal instruction, that they didn't give Mr. Kotler an opportunity to object, and that they didn't follow this court's procedures in Collins. Continue. I think you have time still. I don't see the clock anymore, but I assume you still have a couple minutes. Sure. And so, as I was saying, this would be true even if the court's answers were accurate, which the second one was not. And there are a number of cases that we cite in our briefs, including from this circuit, where... Was it clearly not? I'm sorry. Was it clearly not accurate, or is there some ambiguity about it? Well, we think it's an inaccurate statement, at minimum, that it doesn't provide the context that's necessary to get a complete answer. But even if it wasn't inaccurate, even if it was accurate, or if there was a reasonable dispute about a fact of the case... Yes, ma'am. I'm trying to sign that... Hold on, Ms. Gentleman. It's in there now. I'm trying to get the clock back. Clock is gone. Yeah, because my... It seems like it's stopped on my end, but I'm working on it, and I'm trying to get it back right now. Okay, thank you. Trying to get the clock back. Continue. So there was a reasonable dispute about its accuracy. We don't think the answer was accurate. But even if it were accurate, that's never been part of the analysis as to whether extra record information should be provided to the jury. Actually, in most of the cases, the information that's provided outside of the record from the court and otherwise is actually probably accurate. So that's never been a part of the analysis. But I think it is important just to emphasize why it's important and why this court and the Supreme Court have said it's important to make sure that the information that the jury considers comes into the record through the normal process and with the normal protections of the rule of evidence and the adversarial process. Is there some additional overlay here? Namely, that we should... Understanding that we can describe the error in various ways, but that we should also consider his status as effectively a pro se trial litigant. I think especially with regard to the defendant's forfeiture argument, that's certainly something that should be taken into account and that this court has taken into account in the past is that if you're gonna strictly hold a defendant to forfeiture or a party to forfeiture, that at minimum should be made a bit more lenient for pro se parties because it's less likely that the forfeiture is strategic. So yes, I think it is important that he was pro se and that he made a good faith effort to lodge an objection with the deputy clerk immediately after. Did that right after, right? After the colloquy with the judge? That's right. The judge ended the colloquy. The clerk came out with this proposed letter. He lodged an objection with the clerk. The judge sent the letter unchanged anyway. And he did raise this as an issue in his post-trial motions. And you're saying now, even though it's irrelevant to the point you're making, that it may not even have been an accurate answer. Is that correct? At least to the second answer about whether he could ask if he was being detained or whether prisoners can do that. We think it's inaccurate because the docs regulations say that a prisoner has to comply with orders without argument and that they can't verbally interfere with a prison official's duties. But more to the point, I think really what the jury was asking was, why didn't he say anything? If the weapon had been planted, why didn't he say anything when he was detained? And the court's answer suggested that, well, he could have said something, but he didn't. Draw what conclusion you will from that. Where I think the real answer is, he didn't say anything because regulations tell him not to. And that was an important context that the jury should have heard and which should have come in on the record, not extra record information that the judge provided. Just to underline it, the docs regulations were never introduced into the trial. That's right. I think your time must have expired, but the clock is not visible to me. Let's assume that the time has expired. And you have reserved two minutes for rebuttal, Mr. Tarantella. Is that correct? Yes, your honor. Thank you. Why don't we turn to the government, Mr. Hitzos? Good morning, your honors. Can you hear me? Check my watch this time. So even if the clock doesn't appear, I will know when your time has expired. Proceed. Terrific, your honor. I will begin with the abandonment issue. It's our position that the due process claims were in fact abandoned because over the course of two separate appeals, there was never any addressing of those claims on the merits. Now, we heard in my adversary's argument that there could have been raised the entire disciplinary hearing transcript and that that was independent of the retaliation claims. This is the first time that we're hearing the characterization of the claims in this manner, but if that was assumed to be true, that would only reinforce the need to have raised a separate argument in the briefs because then in that case, there would be both factual and legal distinctions. All we had was a passing reference to due process when describing the claims as raised in the complaint. Let's assume just for the sake of argument that we disagree with you about the abandonment of the due process claim. Would you address the harmlessness argument? Yes, your honor. And our harmlessness argument relates in what Mr. Kotler raised in actuality. So he, and he says in his brief, you can find this on pages 30 through 32, due process is based on Jubert as the hearing officer participating in the scheme for setting up with the weapon. So any evidence that he could have raised in support of the due process claim could have already been put forward at the trial on retaliation. Jubert was a witness. He was asked questions to the effect of whether he had knowledge that these charges were false. Who did he talk to? When did he talk to them? And unless Kotler can be heard to be amending his complaint for the first time at trial, something that he never moved to do, then every shred of evidence that would have went to the retaliation claim or gone to the due process claim, they were interchangeable in essence, his factual presentations. And other than the entirety of the transcript, Kotler has not identified anything that he would have put forward, and he hasn't explained why the entirety of the transcript would have been relevant to the due process claim as he has maintained up until today's oral argument. So as I understand it, the due process claim would have been a premise in part on an argument that there was a bias in the hearing, that the hearing was fundamentally unfair, separate and apart from the search of the cell for the weapon. Why isn't that a tenable argument? Because we understand that, two reasons, Your Honor. One, that is not how we understand that to be raised in the complaint, and that's not how Mr. Kotler has couched it in his briefs. He has couched it as Mr. Jubert being part of the conspiracy. Two, that evidence would still require some knowledge of Mr. or knowledge on Mr. Jubert's part that he was adjudicating Kotler guilty of a charge for which he knew Kotler to be innocent. And that evidence- That's the whole point. I mean, I think that the argument is that if the due process claim had been permitted or been allowed to proceed, they would have tried to marshal this evidence. Well, and our point, Your Honor, is that they were already able to marshal this evidence. There is nothing that they could not have put forward to prove that point that wouldn't have already been relevant to the claim for retaliation. Your Honor, if there is some sort of evidence of bias that would run independently from the alleged retaliatory scheme, perhaps bias that would have been apparent on the face of the transcript, that is something that arguably would have been foreclosed by the third department's decision in the earlier state appeal that found that the hearing was conducted in a fair manner. That would have been adjudicated under the same standard that this court would have applied- Well, so apparently the judge excluded these tapes of the disciplinary hearing because the hearing was no longer an issue as a result of the fact that there was no due process claim. Why isn't that something that we should consider in determining whether the, again, assuming for the sake of argument, that there was a due process, there was an error in connection with determining that the due process claim was abandoned, whether that error was harmless? Because there's no presentation on the part of Kotler as to what they would have sought to show by reference to those transcripts. The only thing that Kotler has ever tried to show is that Jubert adjudicated him guilty on this charge knowing that he was actually innocent because he was either part of the retaliatory scheme or somebody higher up told him, you have to find him guilty. And any evidence that was in the transcript that could have conceivably been relevant to that has already been admitted. We know that portions of the transcript were admitted. And if Kotler was trying to make a case on that point, any particular excerpt from that transcript could have been admitted because it was recognized that that was part of the case. And for that reason, there's no presentation here in rebuttal to harmless error of what Kotler could have done differently or what kind of outcome could have conceivably been different by allowing a due process claim. Counsel, could you speak to the extra record evidence that the district court introduced to this trial after getting a question from the jury? Your Honor, it's our position that there is no extra record evidence because what the jury was asking for was a summary of Kotler's rights under DOCS regulations. DOCS regulations are- Was that part of the trial record, a summary of Kotler's rights or the regulations of DOCS? Was that part of the trial record? The regulation- I looked at the trial record and I didn't see it. The regulations themselves were not admitted into the trial record and it's our position- And what about his rights as you just alluded to? Was that part of the trial record? Your Honor, those would be a question of New York law and the district court is entitled and permitted to apprise the jury on rights under both federal law and state law. But he did not instruct the jury on these rights until they asked a question about it and it was part of the summation of the prosecution. This prosecution tells the jury, why didn't he say anything? He must have known there was a weapon there. That's the question he put into the juror's mind. And then they ask, did he have a right to complain? Did he have a right to ask any questions? And the judge says yes without any reference to the trial record. Isn't that correct? That is correct, Your Honor. But we would disagree on the premise of that question that clarifying on the law is part of the trial record. The record would pertain to the evidence and it would pertain to the fact, not the law. How did the judge instruct the jury as to the law on this point? What did he do to tell them? Did he tell them about New York state law or federal law on the right of someone who was taken out of his cell not to say anything or to ask questions? Was that part of the trial? Did I miss it? Your Honor, by answering the question in the affirmative, the judge provided an accurate synopsis of New York law. I know that my adversary citing to the regulations- Accurate synopsis, but extra record. Will you agree with me that it was totally extra record? No, Your Honor, because clarification on the law exists independently from the record. Under that reasoning, the court would have needed to introduce or the parties would have needed to introduce in evidence the elements of a retaliation. Your view, Mr. Jesus, as I understand it, is that let's say, let's take New York law out of this. If the question posed by the jury had related to some issue of federal law that had not occurred to the parties in connection with preparing the jury instructions or to the judge, and the judge answered that question, that would not be the extra record evidence that we've identified as potential structural error. Is that right? That's correct, Your Honor. That would fall into the analysis governing supplemental instructions. And this happens with some level of frequency. And in the analysis for supplemental instructions, the analysis hinges on whether that instruction was accurate. The judge could have said, as many judges do, I refer you to the instructions I gave you previously. Instead, he answered the question, not based on the record. The judge answered the question based on the law, Your Honor. And it's our position that while that might have been in the permissible range of choice for the judge to decline to answer the question, it was not error, let alone fundamental error for the court to do so. I would note that the judge did hold a conference. Kotler answered a question in the affirmative about something that is indisputably fact-laden and hadn't been introduced previously. That you're referring to, whether there was a camera in his cube, correct? That's correct, Your Honor. And Kotler had no problem volunteering an affirmative answer to that question. The court then proceeded to discuss the answer to the second question. And what the judge could have said, if you will agree with me, the answer that you request, the question that you ask is not answered in the record. You can reopen the trial, let the prosecution put in the docs regulations, but the answer was not in the record. Your Honor, I would agree with you that that is one potential answer that the judge could have posed to the jury, but I would not agree that that is the only permissible answer under these circumstances, particularly when trying to put yourself in everybody's shoes in real time. The court proposes, I think the answer is yes. The defense attorneys say, we agree. Kotler doesn't say anything. And to the extent that that was a correct answer, that can't be fundamental error. I heard counselor say that it wasn't necessarily correct. I heard him say that in response to my question. It wasn't necessarily correct, he said. Can I ask a question to follow up on Judge Pooler's question, which is you're taking the position that this is a legal issue, correct? Whether or not as a legal matter, Mr. Kotler here had a right to either respond or not respond or say something or not, right? You're taking the position that was a legal matter, right? That's correct, Your Honor. It implicates his rights under New York law. So in that event, if this had come up at trial, would the parties not have been precluded from putting in facts? Because one generally can't put evidence about what one believes the law to be, but it would have been left to the district court to decide what the law was. I mean, that would be like saying whether the defendant had a Miranda right is something that you would have competing testimony about. You would not normally have a police officer saying, you know, Miranda under these circumstances did not allow the defendant to remain silent. And then a defense witness to say, under Miranda, he did have a right to remain silent. That would have been simply a question for the court to determine because it was a legal matter. In other words, it would have been inappropriate to develop as a factual matter. That's correct, Your Honor. If I could try and explain how I think it would have gone in the appropriate fashion, you could have a situation where Kotler is on the stand. He testifies and says, I didn't ask any questions because I couldn't. Then we would have objected and there would have been a conference in front of the judge in all likelihood with the jury excused from the room where the parties would put in what they understand New York law to be and the judge would make a ruling on what New York law is. And then we would be in a position to review whether what the district court instructed about the law is correct or not correct. So for example, if the court had instructed to the jury, there is no such thing as Miranda rights. And that when someone is arrested, they have no right not to respond to a police officer. We on appeal would be in a position to review that sort of instruction. I know that's not the particular issue at issue here, but we would be in a position to review that. And if the court had misstated the law and misinstructed the jury, we could correct that error, right? Absolutely, because it's a question of law. And to the extent that this court wants to scour New York law, if this instruction was transparently inaccurate under New York law, then that's something that this court can reveal. No doubt about it. Excuse me, the judge didn't charge the jury on what the New York law was in this particular case. Did he? I read the judge's charge. He didn't mention anything at all about the prisoner's duty or right to speak up or stay silent. That was not part of the charge. That's correct, Your Honor. And that is why we classify this as a supplemental instruction. So going back to Judge Nardini's question about a conference, basically what happened here is the equivalent of the conference that you described, had it happened at an earlier stage of the trial. So had an objection been raised, Cutler could have said in response to the jury note, no, I couldn't have objected. These docs regulations don't allow me to object the argument that he's raising now. We then would have had an opportunity to put in our synopsis of New York law. We could have provided cases as we had in the briefs. Of course, let me remind you again that Cutler was pro se and his standby attorney was not present for this conference. Well, Your Honor, he was pro se, but that does not relieve him from the preservation rules. No, I agree with you, but his standby attorney who helps him during the trial was not there during this conference. And he didn't say, oh, yes, I could have complained. He said nothing. But Your Honor, a linchpin of Cutler's argument here is his belief that he was unable to ask why he was being detained. That was uniquely within his knowledge, what he believed. And Cutler had no problem volunteering a yes answer to the first question about the cameras. Now, if Cutler didn't believe that he could have asked why he was being detained, he was right there at the conference. The conference was being transcribed. All it would have taken. Now I'm confused because I thought you were making an argument about the pure legal issue before the judge in connection with New York law, an issue of New York law. Then what I just heard, but I'm sure that I misunderstood it, is that you start to talk about Mr. Cutler's belief about his rights. That seems to me to be sort of a mixed question of law and fact. And then we stray into the extra record issues that your adversaries have been warning us about. So which is it? If I could back up your honor, I apologize for sowing some confusion. So on the merits, we are talking about a pure question of law. The reason that I brought up belief was to explain why Mr. Cutler should be held responsible for his failure to object. So the way that this would have gone in proper fashion is that Cutler would have been able to say, no, I couldn't have asked why I was being detained. Then we would have said, yes, you could have because New York law allows you to. There would be an exchange about that and the court would have issued a ruling. I'm sorry, with your indulgence, Judge Pooler, may I ask a question to go back to the due process claim? Is there a case that you're aware of, Mr. Edsous, on this issue of an abandoned claim that has gone up through the court of appeals, in this case twice, but it could be once, twice, three times, doesn't really matter. And that we have deemed or where we have affirmed a district court decision that reads our summary orders to mean that the one party of the other has abandoned, or the plaintiff has abandoned a claim. Is there a case like this? I know of no case where the review goes to a district court. That's my fundamental question, yes. Usually abandonment principles  not for a district court judge to decide. So I found this highly unusual with great respect to the district court judge. So can you just educate me why we should, on appeal, permit a district court judge to determine when a claim has been abandoned before the court of appeals? Well, with the court's permission, there are two reasons. First is that when your honors remand a case for trial, it's incumbent on the district court. It has the right, if not the obligation, to determine what's for trial, particularly if the remand order is not crystal clear on the matter. The district court has to make that determination. So I guess my question is, doesn't the lack of crystal clarity inure to the benefit of the claimant? So before you find a claim abandoned, don't you want to make absolutely sure that it's been abandoned? Your honor, the case law that we had uncovered during our research seems to show that it goes the other way. I would direct this court's attention to Scrap Vet. That is a third circuit case. And the third circuit says that if a claim is not in front of the court of appeals and there is no, it's just not addressed, it cannot be remanded just as a logical matter. The failure to brief the claim signifies that the ruling dismissing that claim has gone unchallenged. And therefore silence would inure in favor of abandonment. According to the third circuit. According to the third circuit. But if I can add a principle that this court has announced, I know we're talking about a situation where the district court had found a claim to be abandoned in trying to determine what was teed up for trial. But it's our understanding that the court was simply applying a principle that a claim that could have been raised in a prior appeal that was not raised is no longer at issue. And for that principle, we would direct this court to its decision in Nokia Corp. The Ouzan. And and we would say that the court was merely applying that principle. I see that I have more than doubled my time. I just want to if I could just get on to the record that that we reserve all rights with respect to the rule 25 issue. We believe that Dinelli  dismissed from the case. I'm happy to address any questions that this court has raised. About it. Thank you. Thank you. Tell me you actually have some rebuttal time. And would you first put to rest one of the answers that the district court gave to the question of whether this complaint was an accurate answer? Your Honor, we think it was not an accurate answer. And as I think Judge Logie got to in this question is that it's not. First of all, it wasn't clear that the jury was asking a legal question they asked. Can prisoners ask why they're being detained? And even if it sounded like a legal question, ultimately, it was not a question about the law. It wasn't a question about the law that they were charged with applying to a specific set of facts. It was a question that went ultimately to should we believe Mr. Kotler? Was there a reason that? But if the question if the question posed by the jury, let's just add one little thing. And maybe that's the difference for you. But if the question posed by the jury had been under New York law, can prisoners be detained? And can they say something when they're detained? Would that not be clearly a legal question? It would be a legal question. It would be a factual question masquerading as a legal question. Well, there are all sorts of juries, of course, are interested in a lot of different things, but they can masquerade them as legal questions. But that shouldn't prevent the district court judge or any judge from answering the legal question part. I'm not even sure that I understand when you say it's a factual question, masquerading as a legal question. If the answer is a legal answer, then why isn't that the end of the story? Well, because the jury wasn't asking how should we apply? What exactly is the law that we should be applying? What they were asking was, should we believe Mr. Kotler or shouldn't we? And that was the ultimate issue in the case, especially given the defendants weren't able to produce the physical evidence. It all came down to the credibility. And so they were essentially asking through this question, why was Mr. Kotler? Why did he not protest his detention if the weapon had been planted? And the court's answer was simply, yes, he could have asked where the proper answer would have, well, the proper answer would have been to say there's no information in the record to answer that. The judge, if necessary, could have reopened the record. If the judge had responded under New York law, detainees have the following rights and are prohibited from doing the following, period. Would that have been extra record in the way that would raise these structural error issues? Or would that have been appropriate? It would have been inappropriate for the same reason. And I think this underscores why the procedures that this court laid down are so important. What the judge should have done, even assuming it wasn't a factual question, assuming it was a relevant legal question having to do with the charge. I'm sorry, I see my time's elapsed. May I briefly answer? What the judge should have done was given counsel an opportunity to suggest an answer, which he did not do in a meaningful way, and then bring the jury back into the courtroom, read onto the record what the question that they had posed was, and give them an opportunity to elaborate on it or correct it. Especially given that it's, you know, might be an open question what exactly they were getting at, that would have been the appropriate procedure. But that's not what the court did. That's what this court has required and its precedent. That's not what the district court here did. So even if the answer were accurate, even if the answer were an appropriate statement of the law, the procedural violation itself would make it reversible. Even under the plain error or fundamental error standard. With your indulgence, Judge Poole, I've got a question. I know Mr. Alston was dealing with the due process claim, but I'll ask you, is there a case or a decision from our court that's even roughly on all fours with the set of facts relating to the abandonment of the due process claim that exists here? We haven't been able to find anything in this court's precedent that says the district court should be given any sort of deference in interpreting the court of appeals as mandates. One way or the other, there's nothing. I think we cite a decision in our brief with a statement that there's nothing that's been decided on this question. And I think that's because it would be quite a remarkable outcome for the court of appeals to defer to the district court in interpreting what we think is quite a clear mandate from the court of appeals. Mr. Kotler appealed twice, comprehensive summary judgment. This court reversed and remanded the entire judgment. Mr. Kotler, in his briefs, mentioned the due process claim. There really wasn't a question about whether this was abandoned until a few days before the trial took place. And if I could just, with the court's indulgence, just address the prejudice error. Yeah, that's what I was going to ask you about. The hearing, what would that show? It's unclear to me. I think really the core way that this prejudiced Mr. Kotler was a due process claim is easier to prove, at least in this circumstance, than a retaliation claim. So the core theory that the defendants advanced the trial was that the defendants didn't know about Mr. Kotler's statements on the disciplinary committee, and so they couldn't have retaliated. That would not, Mr. Kotler wouldn't have to prove that in a due process claim. And so he could theoretically have won against Mr. Joubert on due process without proving that he had a retaliatory motive. And the jury only decided the first question in its verdict form, whether or not these defendants, including Mr. Joubert, retaliated against Mr. Kotler. That was the only question they answered when they reached their verdict. They did not answer any question that goes directly to a due process claim, which he could have prevailed upon. And that's based on bias? It could have been based on, for example, his boss telling him to find Mr. Kotler guilty, despite the weight of the evidence that came in at the hearing. That would not necessarily have been a retaliatory motive as pertains to Mr. Joubert, but it would have been a violation of due process. Thank you. My time has also elapsed. If there are no further questions, we will- Thank you both very much for a very lively and informative argument. We will reserve decision.